Timothy K. Talbot, SBN 173456
Zachery A. Lopes, SBN 284394
**RAINS LUCIA STERN, PC**
2300 Contra Costa Boulevard, Suite 500
Pleasant Hill, CA 94523
Telephone:  925.609.1699
Facsimile:   925.609.1690
Email:  ttalbot@rlslawyers.com

Attorneys for Plaintiff
Contra Costa County Deputy Sheriffs Association

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTRA COSTA COUNTY DEPUTY SHERIFFS ASSOCIATION,<br><br>Plaintiff,<br>v.<br><br>KAREN MITCHOFF, MARY PIEPHO, JOHN GIOIA, FEDERAL GLOVER, and COUNTY OF CONTRA COSTA,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br>[42 U.S.C. §§ 1983, 1988; pendent State claims]<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff CONTRA COSTA DEPUTY SHERIFFS ASSOCIATION seeks a judgment in its favor against KAREN MITCHOFF, MARY PIEPHO, JOHN GIOIA, FEDERAL GLOVER, and COUNTY OF CONTRA COSTA and allege as follows:

## NATURE OF ACTION AND JURISDICTION

1. This a civil action under 42 U.S.C sections 1983 and 1988 seeking damages against individually named Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiff and its members of their rights secured under the Constitution and laws of the United States; retaliating against Plaintiff for exercising its constitutionally protected rights of speech and petition; and for refusing or neglecting to

1
**COMPLAINT**

prevent such deprivations and denials to Plaintiff.

2. This case arises under the United States Constitution and 42 U.S.C. sections 1983 and 1988, as amended.  This Court has jurisdiction in this matter pursuant to 28 U.S.C. sections 1331 and 1343.

3. The declaratory and injunctive relief sought is authorized by 28 U.S.C. sections 2201 and 2202, 42 U.S.C. section 1983, and Rule 57 of the Federal Rules of Civil Procedure.

4. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. section 1367(a), over any and all state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

5. Plaintiff brings this action resulting from damages incurred due to the threats made against it by the individually named Defendants in violation of Plaintiff's federal constitutional rights of speech and petition, and to prevent future denials of its federal constitutional rights and rights under state law.

## VENUE

6. This Court is an appropriate venue for this action pursuant to 28 U.S.C. sections 1391(b)(1) and (b)(2).  The actions complained of took place in this judicial district; evidence and records relevant to the allegations are maintained in this judicial district; Plaintiff resides and regularly conducts affairs in this judicial district; Defendants reside and regularly conduct affairs in their individual and official capacities in this judicial district.  Some of Plaintiff's members also reside in this judicial district.

## INTRADISTRICT ASSIGNMENT

7. A substantial part of the events and/or omissions giving rise to the claims herein occurred in Contra Costa County, California, and this action is properly assigned to the San Francisco or Oakland Divisions of this Court.

## PARTIES

8. Plaintiff CONTRA COSTA COUNTY DEPUTY SHERIFFS ASSOCIATION ("the ASSOCIATION" or "DSA") is, and at all relevant times was, a recognized employee organization within the meaning of California Government Code section 3501(b) representing

1  sworn and non-sworn employees of the County of Contra Costa, California. The
2  ASSOCIATION is the exclusive representative in matters relating to its members' wages,
3  hours and other terms and conditions of employment and brings this action in its representative
4  capacity. The ASSOCIATION is organized and operates as a California non-profit mutual
5  benefit corporation.

6  9. Defendant KAREN MITCHOFF is, and at all times relevant was, a duly elected
7  member of the Board of Supervisors of the County of Contra Costa, California. She is sued for
8  damages and injunctive relief pursuant to 42 U.S.C section 1983 in her individual capacity and
9  for declaratory and injunctive relief in her official capacity.

10  10. Defendant MARY PIEPHO is, and at all times relevant was, a duly elected
11  member of the Board of Supervisors of the County of Contra Costa, California. She is sued for
12  damages and injunctive relief pursuant to 42 U.S.C section 1983 in her individual capacity and
13  for declaratory and injunctive relief in her official capacity.

14  11. Defendant JOHN GIOIA is, and at all times relevant was, a duly elected member
15  of the Board of Supervisors of the County of Contra Costa, California. He is sued for damages
16  and injunctive relief pursuant to 42 U.S.C section 1983 in his individual capacity and for
17  declaratory and injunctive relief in his official capacity.

18  12. Defendant FEDERAL GLOVER is, and at all times relevant was, a duly elected
19  member of the Board of Supervisors of the County of Contra Costa, California. He is sued for
20  damages and injunctive relief pursuant to 42 U.S.C section 1983 in his individual capacity and
21  for declaratory and injunctive relief in his official capacity.

22  13. Defendant COUNTY OF CONTRA COSTA, CALIFORNIA ("the County"), is
23  and at all relevant times was, a municipal corporation constituted and operating as a general
24  law county pursuant to the laws of the State of California. The County is a "public agency" as
25  defined in California Government Code section 3501(c). The County is sued for declaratory
26  and injunctive relief in its official capacity.

27  14. At all times mentioned in this complaint, unless otherwise alleged, each
28  individually named Defendant Board member was the agent or co-conspirator of every other

individually named Defendant Board member, and in doing the acts alleged in this complaint, was acting in furtherance of the conspiracy and with the knowledge and consent of each of the other individually named Defendant Board members.

**FACTUAL ALLEGATIONS**

15. Employment relations between the County and the ASSOCIATION are governed by the terms of the Meyers-Milias-Brown Act ("the MMBA"), California Government Code sections 3500 *et seq*. The MMBA's express purpose is "to promote full communication between public employers and their employees by providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations." Cal. Gov. Code § 3500.

16. The MMBA obligates the County and the ASSOCIATION to bargain in good faith regarding wages, hours and other terms to endeavor to reach agreement on those matters. Cal. Gov. Code § 3505.

17. The MMBA states that a "public agency shall not do any of the following: (c) Refuse or fail to meet and negotiate in good faith with a recognized employee organization." Cal. Gov. Code § 35056.5(c).

18. California Code of Regulations, title 8, section 32603(c) provides that it shall be an unfair labor practice for a public agency to "[r]efuse or fail to meet and confer in good faith with an exclusive representative as required by Government Code section 3505 or any local rule adopted pursuant to Government Code section 3507."

19. In the event the parties' good faith efforts to reach agreement prove ineffective and further negotiations would be futile, either party to the negotiations can declare an impasse. *Gulf States Mfg. Inc. v. N.L.R.B.*, 704 F.2d 1390, 1398-99 (5th Cir. 1983). Once a party declares impasse, the MMBA provides specific parameters as to the timing and procedures designed to facilitate an amicable resolution. Cal. Gov. Code §§ 3505.4, 3505.5, 3505.7. After impasse resolution procedures have been exhausted, the employer may implement terms and conditions of employment reasonably apprehended from its last, best and final offer. Cal. Gov. Code § 3505.7; *San Joaquin County Employees Association v. City of Stockton*, 161

1 | Cal.App.3d 813 (1984).

2 |     20.    On October 28, 2014, the Contra Costa County Board of Supervisors, Defendants MITCHOFF, PIEPHO, GIOIA and GLOVER, voted to increase their salaries and tie future salaries of the supervisors of the County of Contra Costa to those of California Superior Court judges. The vote resulted in an approximate 33 percent pay salary increase for the supervisors, setting Board member salaries at 70 percent of judicial salaries. Subsequently, on November 19, 2014, a number of Contra Costa public employee unions, including the ASSOCIATION, announced a petition drive to place a referendum on the ballot that would reverse the salary increase.

    21.    On December 11, 2014, former ASSOCIATION President Ken Westermann met with Defendant PIEPHO. Westermann wanted to explain why the ASSOCIATION was involved with the petition and referendum process. Westermann explained to Defendant PIEPHO that the ASSOCIATION was exercising its constitutional right of free speech and petition to express its opposition to the exorbitant pay increase the Contra Costa County Board of Supervisors approved for itself. In response, Defendant PIEPHO told Westermann that the ASSOCIATION "made a bad decision and it is not going to end well for you guys." Westermann believed Defendant PIEPHO was threatening the ASSOCIATION with retaliation in an effort to dissuade the ASSOCIATION from continuing with the petition and referendum and to chill the ASSOCIATION's exercise of protected speech in the future. Westermann asked Defendant PIEPHO what more she and the other Board members could do to make working conditions less attractive for the ASSOCIATION and its members. In a very dismissive tone Defendant PIEPHO said "we can always make it worse."

    22.    On December 16, 2014, during a meeting of the Contra Costa Board of Supervisors, Defendant PIEPHO mentioned bringing "Chuck Reed type pension reform" to Contra Costa County. "Chuck Reed type pension reform" is a reference to an alteration in pension and retirement benefits provided to most California public employees, including members of the ASSOCIATION, characterized by substantial reductions in the value of such benefits. At no time prior to December 16, 2014, had any individually named Defendant Board

1 member or agent of the Contra Costa County Board of Supervisors publicly mentioned the implementation of such alteration in pension and retirement benefits or alluded to such matters in private conversations with ASSOCIATION representatives.

23. On December 19, 2014, the Contra Costa Board of Supervisors, acting as the governing body of the Contra Costa County Fire District, conducted a public meeting in the Board of Supervisors' chambers (Room 107) at the County Administration Building, 651 Pine Street, Martinez, to approve a new collective bargaining agreement between the County and the United Professional Firefighters Local 1230. Following the meeting, Defendant MITCHOFF summoned Local 1230 President Vince Wells and another Firefighters Local board member, Vito Impastato, for a conversation in the Supervisors' chambers. Defendant PIEPHO subsequently joined the conversation with Defendant MITCHOFF.

24. Defendant MITCHOFF told Wells to deliver a message to Westermann and the ASSOCIATION. The message was that the referendum sponsored by the ASSOCIATION to reverse the salary increase Defendants had granted to themselves was going to end badly for the ASSOCIATION. Defendant MITCHOFF said the supervisors would be "coming after" the ASSOCIATION in the next round of bargaining for terms and conditions of employment for the County employees represented by the ASSOCIATION. Defendant MITCHOFF stated that the Contra Costa Board of Supervisors would present their own referendum and reiterated Defendant PEIPHO's threat, made during the Contra Costa Board of Supervisors' meeting on December 16, 2014, to bring "Chuck Reed type pension reform" to Contra Costa County employees. Defendant PIEPHO was nodding her head in the affirmative, concurring with Defendant MITCHOFF's threat. Defendant MITCHOFF said she would gladly be the swing vote in support of such a referendum.

25. Wells asked Defendant MITCHOFF if the Defendants would voluntarily rescind their salary raise if the ASSOCIATION was able to pull the signatures supporting the petition. Defendant MITCHOFF scoffed and said, "No. That would be extortion." Wells replied, "Well, isn't that what you are threatening to do to them?" Defendant MITCHOFF responded that the Firefighters and other labor unions could become collateral damage in this fight and

1  that the Firefighters needed to convince the ASSOCIATION to stop the petition and
2  referendum. Wells regarded Defendant MITCHOFF's statement as a threat against Local
3  1230.
4      26.    Shortly after leaving the Board of Supervisors' chambers, Wells telephoned
5  Westermann and, as urged by Defendant MITCHOFF, relayed the threats communicated to him
6  by Defendant MITCHOFF. Westermann then telephoned Jim Bickert, the ASSOCIATION's
7  retained labor representative.
8      27.    Bickert telephoned Defendant MITCHOFF on the evening of December 19,
9  2014, and spoke to her for over an hour about her conversation with Wells. Defendant
10 MITCHOFF repeated her threats of retribution many times, including mention of "Chuck Reed
11 type" pension reform. When asked how she would vote on such "reform" if the
12 ASSOCIATION withdrew the signatures supporting the referendum, Defendant MITCHOFF
13 replied that she would "probably vote against it." Defendant MITCHOFF told Bickert there
14 would be ramifications for the ASSOCIATION pushing the referendum to rescind Defendants'
15 salary raise and it would ruin the next labor negotiations. Defendant MITCHOFF said human
16 nature says there will be negative ramifications for the ASSOCIATION as a result of this
17 action. Defendant MITCHOFF said the county supervisors are all on board with her threats
18 and would not change their minds. Defendant MITCHOFF also said the ASSOCIATION is
19 "stupid" if they think the petition to place the referendum on the ballot would turn out well for
20 them. Defendant MITCHOFF added that the county supervisors were previously committed to
21 increasing compensation for the county employees represented by the ASSOCIATION, but as a
22 result of the referendum, the ASSOCATION and its members would not receive what they
23 would have gotten. Defendant MITCHOFF said she has nothing to lose by "coming after" the
24 ASSOCIATION, adding, "I'm only going to be around for the next four or eight years. But the
25 DSA is going to suffer for many years to come."
26     28.    On January 6, 2015, at a meeting of the Contra Costa Board of Supervisors,
27 Defendant PEIPHO again mentioned implementing "Chuck Reed type pension reform."
28     29.    The ASSOCIATION gathered and timely submitted to the Clerk of the Board of

Supervisors of Contra Costa County approximately 39, 922 signatures in support of the petition, well in excess of the minimum required by law to place the referendum on the ballot.

30. On January 13, 2015, the Contra Costa Board of Supervisors voted to begin the process of rescinding the 33 percent pay increase they approved on October 28, 2014.

## FIRST CAUSE OF ACTION
**Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988
Violation of First Amendment Speech and Association Rights
(Against all Individually Named Defendant Members of the Board)**

31. The foregoing allegations are incorporated as if re-alleged herein.

32. The individually named Defendant Board members have violated Plaintiff's First Amendment rights to speech, association and petition by threatening Plaintiff and its members with adverse employment consequences because Plaintiff has participated in a petition effort to place a referendum measure on the ballot for submission to the local electorate. By their conduct, as described herein, and acting under color of state law to deprive Plaintiff of its rights to freedom of speech, right of association, and the right to petition under the First and Fourteenth Amendments to the United States Constitution, the individually named Defendant Board members are liable for violation of 42 U.S.C. section 1983, which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

33. As a consequence of the individually named Defendant Board members' actions, Plaintiff has suffered violations of its First and Fourteenth Amendment rights to free speech, association and petition. Plaintiff and its members have fear and apprehension that they will, again, be subject to similar unlawful acts by the individually named Defendant Board members done for the unlawful purpose of limiting and preventing them from engaging in protected First Amendment activities.

34. Plaintiff and its members have suffered, and will continue to suffer, great and irreparable harm as a result of the individually named Defendants' conduct and threats intended to chill their exercise of constitutionally protected speech and associational rights. County employees may be less likely to become or remain members of the ASSOCIATION and to participate in the ASSOCIATION's activities based on the potential adverse consequences to

their wages, benefits and working conditions threatened by the individually named Defendant Board members.

35. As a direct and proximate result of the unlawful actions by the individually named Defendant Board members, and each of them, Plaintiff and its members have suffered damages, including but not limited to, physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

36. The individually named Defendant Board members are in a position to carry out the threats by virtue of being able to impose terms and conditions of employment on the ASSOCIATION and its members should the parties meet and negotiate to impasse.

37. Under California law, decisions regarding the terms and conditions of employment for County employees represented by the ASSOCIATION cannot be delegated to any other person or entity and must be made by the Defendant Board members. *County of Riverside v. Superior Court*, 30 Cal.4th 278 (2003).

WHEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION
**Violation of Meyers-Milias-Brown Act Cal. Gov. Code §§ 3500 et seq.**

38. The foregoing allegations are incorporated as if re-alleged herein.

39. The MMBA imposes a duty upon the County to meet and negotiate in good faith with the ASSOCIATION regarding wages, hours and other terms and conditions of employment for County employees represented by the ASSOCIATION, and to refrain from engaging in actions intended to frustrate the parties' ability to reach agreement on a labor contract.

40. The actions of the individually named Defendants, and each of them, interfere with the right of the ASSOCIATION to represent its members, deny the ASSOCIATION the right to meet and negotiate in good faith, and demonstrate a deliberate intent on the part of the Defendant Board members not to meet and negotiate in good faith, but instead to carry out threats against the ASSOCIATION and its members for exercising of their protected rights.

41. The County is similarly precluded from engaging in conduct that denies

employee organizations such as the ASSOCIATION the right to represent their members in employment relations with the County, or otherwise enjoy rights guaranteed to them by the MMBA. Cal. Gov. Code §§ 3503, 3504.5, 3505.1, 3505.3, 3507.1, 3508(d) or 3508.5.

42. Defendants are in a position to carry out the threats by virtue of being able to impose terms and conditions of employment should the parties meet and negotiate to impasse.

43. Under California law, decisions regarding the terms and conditions of employment for County employees represented by the ASSOCIATION cannot be delegated to any other person or entity and must be made by Defendants. *County of Riverside v. Superior Court,* 30 Cal.4th 278 (2003).

44. The ASSOCATION and its members have suffered, and will continue to suffer, great and irreparable harm as a result of Defendants' conduct and threats.

WHEREFORE, Plaintiff prays for relief as set forth below.

## PRAYER

Plaintiff prays for judgment against Defendants, and each of them, as follows:

a. A declaration that the individually named Defendant Board members' conduct violated the First and Fourteenth Amendments to the United States Constitution and Plaintiff's rights under the MMBA in the manners alleged herein, upon consideration of the evidence adduced at trial or otherwise;

b. An injunction enjoining the individually named Defendant Board members from engaging in conduct to unlawfully disrupt, disperse, interfere with, or otherwise prevent the lawful First Amendment activities alleged herein;

c. An injunction enjoining the individually named Defendant Board members from retaliating against the ASSOCIATION and its members for engaging in the lawful First Amendment activities alleged herein by imposing terms and conditions of employment upon County employees represented by the ASSOCIATION that are less advantageous than those currently enjoyed by the ASSSOCIATION and its members;

d. An injunction enjoining all Defendants from engaging in conduct that does not comply with the requirements of the MMBA by failing or refusing to meet and negotiate in

good faith;

e. An injunction enjoining all Defendants from imposing terms and conditions of employment upon County employees represented by the ASSOCIATION that are less advantageous than those currently enjoyed by the ASSOCIATION and its members;

f. An injunction enjoining all Defendants from conditioning terms and conditions of employment for County employees represented by the ASSOCIATION on Plaintiffs' relinquishment of their protected rights;

g. Award Plaintiff actual damages as permitted by law and according to proof at trial;

h. Award Plaintiff punitive damages against each individually named Defendant Board member;

i. Award Plaintiff attorneys' fees pursuant to 42 U.S.C. section 1988;

j. Award Plaintiff costs of suit pursuant to 42 U.S.C. sections 1988 and 1920; and

k. Award Plaintiff such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice and to effectuate the purpose and intent of the laws referenced herein.

Dated: January 20, 2015                    Respectfully submitted,

                                           RAINS LUCIA STERN, PC


                                           By: /s/ *Timothy K. Talbot*
                                               TIMOTHY K. TALBOT
                                               Attorneys for Plaintiff
                                               Contra Costa County Deputy Sheriffs
                                               Association

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial for all issues.

Dated: January 20, 2015                    Respectfully submitted,

                                           RAINS LUCIA STERN, PC


                                           By: /s/ *Timothy K. Talbot*
                                                 TIMOTHY K. TALBOT
                                                 Attorneys for Plaintiffs
                                                 Contra Costa County Deputy Sheriffs
                                                 Association