UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CONTRA COSTA COUNTY DEPUTY SHERIFFS ASSOCIATION,

Plaintiff,

v.

KAREN MITCHOFF, et al.,

Defendants.

Case No. 15-cv-00261-TEH

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on Defendants' motion to dismiss Plaintiff's January 20, 2015 Complaint. The Court has carefully considered the arguments of the Parties in the papers submitted, and finds this matter suitable for resolution without oral argument, pursuant to Civil Local Rule 7-1(b). Defendants' motion to dismiss is hereby GRANTED, for the reasons set forth below.

**BACKGROUND**

Contra Costa County Deputy Sheriff's Association ("Plaintiff" or "DSA") is a recognized employee organization under California Government Code section 3501(b), representing sworn and unsworn County employees who work for the Office of the Sheriff in Contra Costa County. Compl. ¶ 8 (Docket No. 1). Plaintiff brought this action on behalf of its members, in its representative capacity. *Id.* The Complaint alleges that Contra Costa County and four members of the County Board of Supervisors (collectively "Defendants") violated Plaintiff's First Amendment rights by making threats in retaliation for Plaintiff's participation in a petition drive to overturn a Supervisor salary increase passed by the Board of Supervisors. *Id.* ¶¶ 20-37. The Complaint also alleges a violation of the Meyers-Milias-Brown Act ("MMBA"), codified as California Government Code section 3500 *et seq.*, which obligates Defendants to negotiate in good faith with employee

groups regarding wages, hours, and other terms of employment. *Id.* ¶¶ 15-19, 38-44; Cal. Gov. Code § 3505.

Specifically, Plaintiff alleges that Defendant Piepho, a County Supervisor, threatened the former president of the DSA as a result of the Association's involvement in the petition drive, stating that Plaintiff had "made a bad decision and it is not going to end well for you guys." Compl. ¶ 21. Piepho also allegedly told Plaintiff's representative that its members' working conditions were something that Defendants "can always make worse." *Id.* The Complaint further alleges that during two public meeting of the Board of Supervisors, Piepho mentioned bringing "Chuck Reed type pension reform" to the County, which Defendants understood as "an alteration in pension and retirement benefits provided to most California public employees, including members of the Association, characterized by substantial reductions in the value of such benefits." *Id.* ¶¶ 22, 28. Additionally, Defendant Mitchoff, also a County Supervisor, allegedly alluded to the possibility of "Chuck Reed type pension reform" on two occasions: once to members of the United Professional Firefighters Local 1230 Union, and later during a telephone call with a business agent hired by Plaintiff. *Id.* ¶¶ 24, 27. During that phone call, Mitchoff allegedly remarked that "human nature says there will be negative ramifications" for Plaintiff, and that "the county supervisors were all on board" with her and "would not change their minds." *Id.* ¶ 27. Mitchoff also allegedly said Plaintiff was "stupid" if they thought the petition drive would turn out well for them; that although the Board of Supervisors had previously intended to increase the compensation of Plaintiff's members, this would no longer happen due to the petition; and that she had nothing to lose by "coming after" Plaintiff, explaining: "I'm only going to be around for the next four or eight years. But the DSA is going to suffer for many years to come." *Id.* Other similar allegations are made elsewhere in the Complaint. *See id.* ¶¶ 20-30.

Plaintiff brought this Complaint on January 20, 2015. Defendants filed the instant motion to dismiss on February 17, 2015. (Docket No. 15). Plaintiff timely responded, and

2

Defendants replied. (Docket Nos. 18, 19). The hearing on this motion was previously set for March 30, 2015.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) requires dismissal when a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under this Rule, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal under Rule 12(b)(6) is also proper where there is a "lack of a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. A court may consider the pleadings, along with any exhibits properly attached thereto. *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555, n.19 (9th Cir. 1989). Additionally, on a motion to dismiss a court may properly look beyond the complaint to matters judicially noticed "without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

"[I]f a complaint is dismissed for failure to state a claim upon which relief can be granted, leave to amend may be denied . . . if amendment of the complaint would be futile." *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988).

## DISCUSSION

### I.  Judicial Notice

Defendants seek the judicial notice of eight documents, designated Exhibits A-H in their Request for Judicial Notice.  (Docket No. 16).  These documents include a County Budget Report (Ex. A), Memoranda of Understanding between the County and the DSA (Exs. B, C), the County Board of Supervisors' Meeting Agenda and Minutes regarding the introduction of the contested salary increase (Ex. D), a similar document regarding the ordinance that repealed this salary increase (Ex. E), and three documents regarding outside legal proceedings (Exs. F, G, H).  In their Request for Judicial Notice, Defendants do not explain the relevance of these documents or provide any substantive argument why the Court should take judicial notice of them.

A court may take judicial notice of an adjudicative fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Noticeable facts include "matters of public record outside the pleadings," as well as proceedings in other courts that "have a direct relation to matters at issue."  *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *MGIC Indem. Corp. v. Weisman*, 803 F.3d 500, 504 (9th Cir. 1986).  Where a party requests notice of filings made in other courts, notice may only be taken "for the limited purpose of recognizing the 'judicial act' that the order [or filing] represents," not for the truth of the matters asserted in those filings.  *Wheeler v. City of Oakland*, No. 05-0647-SBA, 2006 WL 1140992, at *5 (N.D. Cal. Apr. 28, 2006) (citing *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994); *San Luis v. Badgley*, 136 F. Supp. 2d 1136, 1146 (E.D. Cal. 2000) (a court "may take judicial notice of a document filed in another court not for the truth of the matters asserted in the litigation, but rather to establish the fact of such litigation and related filings")).  Finally, judicial notice should not be taken for irrelevant matters.  *Ruiz v. City of Santa Monica*, 160 F.3d 543, 548, n. 13 (9th Cir. 1998).  A matter is relevant if "it has

any tendency to make a fact more or less probable," and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

In their Request for Judicial Notice, Defendants fail to explain why these documents should be judicially noticed. The Court has neither the time nor the inclination to discern and assess every possible reason that Defendants might be seeking judicial notice of the documents submitted. Nonetheless, the Court will briefly consider each document in turn.

Exhibit A is not mentioned in Defendants' Motion, and it is not immediately clear why Defendants request that it be judicially noticed. As a result, the Court DENIES Defendants' request as to Exhibit A.

The Court GRANTS Defendants' request for judicial notice of Exhibits B and C to the extent that they establish the fact that contract negotiations between the Parties will not occur for another 16 months. *See* Mot. at 3 (citing these exhibits to show that "[t]he contract is closed for another 16 months and the parties have not begun to negotiate."). This fact is relevant to the disposition of Defendants' motion, as is explained below, and the Memoranda are matters of public record. *See Ruiz*, 160 F.3d at 548, n. 13 (allowing notice of relevant facts); *MGIC Indem. Corp.*, 803 F.3d at 504 (allowing notice of matters of public record). Insofar as Defendants seek judicial notice of other portions of these documents, such a request is DENIED.

Exhibits D and E are not relevant, as the facts they contain are not in dispute, and the existence of the salary ordinance, as well as the ordinance repealing it, are not "fact[s] of consequence in determining the action." Fed. R. Evid. 401. Accordingly, Defendants' request for judicial notice of Exhibits D and E is DENIED.

It is not clear why Defendants seek judicial notice of the court filings provided in Exhibits F, G, and H. Plaintiff's Opposition speculates that Defendants might be seeking notice of these proceedings in order to demonstrate that the County cannot withdraw from the county retirement system through a voter initiative process, supporting Defendants' claim that they cannot easily impose pension reform on the DSA's membership. Opp'n at

21. As an initial matter, the Court cannot notice the truth of the matters asserted within these court filings. *See Wheeler*, 2006 WL 1140992, at *5. Assuming Defendants seek notice of the filings' existence for the reasons offered by Plaintiff, the Court finds such notice unnecessary. The fact that Defendants cannot easily impose pension reform on Plaintiff's membership is independently established by the fact that pension matters in Contra Costa County are governed by the County Employees' Retirement Law of 1937. *See* Mot. at 6; Opp'n at 11 (citing *Traub v. Board of Retirement*, 34 Cal.3d 793 (1983)). Consequently, these documents are of only minimal, if any, relevance. The Court sees no reason to impute Plaintiff's explanation for why Defendants seek to have these documents judicially noticed, especially where such notice has no impact on the substantive motion. Accordingly, Defendants' request for judicial notice of Exhibits F, G, and H is DENIED.

## II. Plaintiff's First Amendment Retaliation Claim

"In order to state a claim against a government employer for violation of the First Amendment, an employee must show (1) that he or she engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that his or her speech was a 'substantial or motivating factor' for the adverse employment action." *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). An adverse employment action is one that is "reasonably likely to deter employees from engaging in protected activity." *Id.* at 976. While an adverse employment action can take many forms, it is the law of this circuit that "[m]ere threats and harsh words are insufficient." *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998).

In *Nunez*, a police officer brought a First Amendment claim alleging that his supervisors scolded him and threatened to transfer or dismiss him in retaliation for comments he made regarding the LAPD's practice of promoting unqualified applicants. *Id.* at 870, 874. The Ninth Circuit held that Nunez failed to allege an adverse employment action, which requires "the loss of a valuable governmental benefit or privilege," and must amount to more than "mere threats and harsh words." *Id.* at 874-75 (internal quotation

6

1    marks omitted).  While *Coszalter* broadened the scope of conduct that can constitute an
2    adverse employment action, such that "the relevant inquiry is whether the state had taken
3    action designed to retaliate against and chill political expression," the holding of *Nunez* -
4    that the retaliatory conduct must be something more than threatening speech and
5    badmouthing - remains good law.  *See Coszalter*, 320 F.3d at 975; *Nunez*, 147 F.3d at 875
6    ("It would be the height of irony, indeed, if mere speech, in response to speech, could
7    constitute a First Amendment violation.").

8        In this case, the Complaint alleges that Defendants have engaged in nothing more
9    than threatening speech.  The County Board of Supervisors has not formally proposed any
10   legislation or undertaken any vote that might negatively impact Plaintiff's members.
11   Furthermore, negotiations between the Parties regarding future labor contracts have not yet
12   begun.  Instead, according to the Complaint, two members of the Board have made threats
13   regarding future contract negotiations, and issued harsh, but ultimately hollow, words
14   regarding pension reform.  Until the Ninth Circuit invalidates *Nunez* in its entirety, these
15   allegations are insufficient to meet the adverse employment action requirement for a First
16   Amendment claim brought by public employees against their employer.

17       Plaintiff attempts to avoid the adverse employment action requirement by asserting
18   that it is not an employee of Defendants, and that it brings this lawsuit in its organizational,
19   rather than representative, capacity.  Opp'n at 5-6.  This argument, however, is belied by
20   the language of the Complaint, which states: "The ASSOCIATION is the exclusive
21   representative in matters relating to its members' wages, hours and other terms and
22   conditions of employment and <u>brings this action in its representative capacity</u>."  Compl.
23   ¶ 8 (emphasis added).  An association only has standing to bring suit on behalf of its
24   members in a representative capacity when, among other things, its members would
25   otherwise have standing to sue in their own right.  *Hunt v. Washington State Apple Adver.*
26   *Comm'n*, 432 U.S. 333, 343 (1977).  Plaintiff's members are indisputably employed by
27   Defendants, and therefore would need to allege an adverse employment action to bring this
28   suit in their own right.  Because Defendants have not engaged in any adverse employment

7

1   actions, members of the DSA cannot assert a First Amendment claim against them. It
2   follows that Plaintiff's representative action must therefore fail as well.
3       Accordingly, Plaintiff's First Amendment claim is DISMISSED WITHOUT
4   PREJUDICE.

### III. Sufficiency of Complaint Regarding Defendants Gioia and Glover

To state a claim against Defendants Gioia and Glover, Plaintiff must allege in its complaint that these individuals "through [their] own individual actions," personally participated in the deprivation of its members' rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

It is undisputed that Defendants Gioia and Glover did not personally participate in any of the conversations at issue in this case. Instead, Plaintiff predicates their liability upon a theory of conspiracy. However, Plaintiff's factual allegations regarding the conspiratorial conduct between Defendants Gioia and Glover and Defendants Piepho and Mitchoff amount to nothing more than the terms used in the latter's threats: "we," "Board of Supervisors," "supervisors," "county supervisors," and "all on board." Compl. ¶ 21, 24, 27. Such allegations are "merely consistent" with a claim of liability, and therefore stop short of the "line between possibility and plausibility of entitlement to relief." *See Iqbal*, 556 U.S. at 678. Indeed, the lack of factual allegations against Defendants Gioia and Glover makes it more plausible that Defendants Piepho and Mitchoff misled the DSA regarding Gioia and Glover's support in order to add weight to their threats. *See Cole v. Sunnyvale*, No. 08-5017-RMW, 2010 WL 532428, at *2 (N.D. Cal. Feb. 9, 2010) ("Where the facts, taken as true, are consistent with the possibility of wrongdoing, but where more likely explanations also arise from those same facts, the allegations do not 'plausibly suggest an entitlement to relief' and are appropriately subject to dismissal under Rule 12(b)(6)."). Given the lack of factual support, the Court is reluctant to drag individuals

8

1   into court simply because others claimed their involvement while engaging in prohibited
2   behavior.
3     Plaintiff's reliance upon *Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012), is
4   misplaced.  Opp'n at 8.  In *Lacey*, the allegations of conspiracy were sufficient post-*Iqbal*
5   because the complaint alleged specific actions undertaken by each member of the
6   conspiracy.  *See Lacy*, 693 F.3d at 935-36 (alleging, for example, "[Thomas] recused
7   himself and appointed Wilenchik.").  Moreover, the court actually found that the
8   allegations of conspiracy were *insufficient* for some purposes, lacking necessary details as
9   to the timing of the conspiracy.  *Id.* at 937.  Here, the Complaint alleges no specific actions
10  on the part of Defendants Gioia and Glover, only that Defendants Piepho and Mitchoff
11  acted with their knowledge and consent.  *See* Compl. ¶ 14.  This is insufficient in light of
12  the pleading standard articulated by *Twombly* and *Iqbal*.
13    In order to bring a viable claim against Defendants Gioia and Glover, Plaintiff will
14  need to do more than make conclusory allegations loosely supported by third party threats.
15  The Court recognizes the difficulty of such an undertaking before access to discovery.
16  Nonetheless, this is the burden imposed upon all plaintiffs by *Twombly* and *Iqbal*.
17  Therefore, in addition to the general insufficiency of Plaintiff's First Amendment claim as
18  provided above, the suit against Defendants Gioia and Glover is DISMISSED WITHOUT
19  PREJUDICE on these grounds.

**IV.  Immunity**
 **A.  Legislative Immunity**
  State and local legislators enjoy absolute immunity for their legislative acts.  *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998).  Whether legislative immunity applies depends upon whether the official is engaged in legislative activity.  *See, e.g.*, *id.* at 55 (city council member who introduced budget eliminating plaintiff's employment position and mayor who signed bill into law protected by absolute immunity); *Sup. Ct. of Va. v. Consumers Union of the U.S.*, 446 U.S. 719, 734 (1980) (state judges' promulgation of attorney

professional responsibility rules was protected by absolute immunity). The determination of an act's legislative character "turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. When evaluating whether an act by members of a legislative body is entitled to legislative immunity, courts consider "(1) whether the act involves ad hoc decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation." *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012).

Defendants allege legislative immunity both for the threat of pension reforms and the threat of taking a hard line in future contract negotiations regarding employee pay and benefits. Mot. at 13-15. The Court finds legislative immunity does not attach to the threat of pension reform, but does attach to the threats regarding contract negotiations.

### 1. Legislative Immunity Does Not Protect Defendants' Pension Reform Threats.

When the named Defendants threatened "Chuck Reed type pension reform," they were not engaged in a legislative act, as is required to claim the protection of legislative immunity. *Bogan*, 523 U.S. at 55. The Parties agree that pension matters in Contra Costa County are governed by the County Employees' Retirement Law of 1937, California Government Code sections 31450, *et seq.* Mot. at 6; Opp'n at 11 (citing *Traub v. Board of Retirement*, 34 Cal.3d 793 (1983)). It follows that as a matter of state law, Defendants do not have the ability to amend the provisions of that act to bring about the threatened pension reforms. Unlike a prosecutor's threat to prosecute, or a judge's threat to hold a litigant in contempt, Defendants' threats were necessarily empty ones. Indeed, it sounds in reason that such threats cannot be part of a legislative act where there is no possibility of legislation. The fact that these threats were made by legislators is without consequence, as the act of making those statements cannot fairly be described as legitimate legislative activity. *See Bogan*, 523 U.S. at 54. This conclusion is supported by the rationale behind legislative immunity, which allows legislators to exercise "legislative discretion" without

being "inhibited by judicial interference or distorted by the fear of personal liability." *Id.* at 52. Logically, the law should not be concerned with inhibiting a legislator from threatening to take actions that she clearly has no authority to take.

The Court is similarly unconvinced by Defendants' argument that they should be immune because they might later endorse or advocate statewide pension reform. Mot. at 13; Reply at 9. There is no indication that Defendants were engaged in statewide pension reform advocacy when these threats were made, and absent such evidence, the immunity provided to legislative advocacy does not apply.

### 2. Legislative Immunity Protects Defendants' Negotiation-Related Threats.

Conversely, negotiating the terms of DSA members' employment is within the authority of the Board of Supervisors. When considering the four *Schmidt* factors provided above, stating a potential policy position on public employee contract negotiations that affect a large yet discrete group of people satisfies the first and second factors, supporting an application of legislative immunity. *Schmidt*, 693 F.3d at 1136. This assessment is not changed by the fact that Defendants' actions targeted County employees instead of the entire population. *See id.* ("An act need not affect a city's entire population in order to be considered legislative. It is sufficient that the act affects a discrete group of people or places.").

The third *Schmidt* factor, which considers whether the act is formally legislative in character, also weighs in favor of finding legislative immunity for these statements. *See id.* at 1137. Under California law, collective bargaining agreements covering County employees must be approved by the Board of Supervisors in order to take effect. Cal. Gov. Code § 3505.1. Courts have consistently found that legislative votes affecting the positions and salaries of city employees are legislative acts. *See Rabkin v. Dean*, 856 F. Supp. 543, 547 (N.D. Cal. 1994); *see also Schmidt*, 693 F.3d at 1137 ("The act of voting on and passing ordinances and resolutions pursuant to correct legislative procedures is 'formally and indisputably legislative.'") Accordingly, pre-negotiation policy positioning

11

is legislative in nature in the same way that threats of prosecution are prosecutorial in nature. *See Guttman v. G.T.S. Khalsa*, 446 F.3d 1027, 1034 (10th Cir. 2006) (prosecutor's "threat to file a revocation action unless [plaintiff] responded within the deadline" was protected by absolute immunity).

Finally, these actions bear the hallmarks of traditional legislation under the *Schmidt* test's fourth factor. "The hallmarks of traditional legislation include the use of discretion, the making of policy that implicates budgetary priorities and the provision of services, and prospective implications that reach beyond the particular persons immediately impacted." *Schmidt*, 693 F.3d at 1137. As in *Schmidt*, the negotiation of a collective bargaining agreement, and to a greater extent the act of pre-negotiation policy positioning, is discretionary, and "implicates budgetary priorities and the provision of services" within the County. *Id.* Consequently, comments that position the Board of Supervisors even before formal negotiations begin are protected by legislative immunity.

### B. Immunity under the Speech and Debate Clause

The Court is not convinced that Defendants' statements regarding pension reform are protected by the Speech and Debate Clause. The Speech and Debate Clause provides immunity for legislators acting within "the sphere of legitimate legislative activity." *Tenney v. Brandhove*, 341 U.S. 367, 372-73 (1951). The Clause does not, however, provide a blanket protection of everything said or done within a legislative forum. "Only acts generally done in the course of the process of enacting legislation [are] protected" by the Speech and Debate clause. *United States v. Brewster*, 408 U.S. 501, 514 (1972).

The pension reform comments made during Board meetings were not made "in the process of enacting legislation." *See id.* As is explained above, the fact that the Board has no authority to enact pension reform disqualifies such threats from being within "the sphere of legitimate legislative activity." *Tenney*, 341 U.S. at 372-73. Furthermore, there is no evidence that Defendants were engaged in legislative advocacy for pension reform

1 when such threats were made. Accordingly, those threats are not protected by the Speech
2 and Debate Clause.

### C. Immunity under the Noerr-Pennington Doctrine

"The Noerr-Pennington doctrine ensures that those who petition the government for redress of grievances remain immune from liability for statutory violations, notwithstanding the fact that their activity might otherwise be proscribed by the statute involved." *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000). "While the Noerr-Pennington doctrine originally arose in the antitrust context, it is based on and implements the First Amendment right to petition and therefore, with one exception . . . applies equally in all contexts." *Id.*

As a preliminary matter, the Court agrees with Defendants that the Noerr-Pennington Doctrine can apply outside the context of antitrust matters. Mot. at 16; Reply at 10; *White*, 227 F.3d at 1231. However, the Court disagrees with Defendant's application of the Doctrine to the facts of this case.

The Noerr-Pennington Doctrine operates to protect the right to petition one's government, and otherwise engage in legislative advocacy. *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1093 (9th Cir. 2000). As already discussed, the Board does not have the authority to enact pension reform, so the individual Board members could not have been lobbying each other for the passage of such reform measures. There is also no evidence that Defendants were lobbying their constituents or the state legislature to enact pension reform. Therefore, an immunity doctrine that protects public officials' attempts to "intercede, lobby, and generate publicity to advance their constituents' goals" is inapplicable given the facts presently before the Court. *See id.* Defendants' argument here is anticipatory: it looks to the possibility that Defendants might lobby for pension reform in the future and asks the Court to find immunity for past behavior as a result. *See* Mot. at 17. The Court declines to do so, as it must determine the application of immunity to what

Defendants have already done, not what they *might* do at some later date. The Noerr-Pennington Doctrine is therefore inapplicable.

## V.   The Meyers-Milias-Brown Act Claim

The Meyers-Milias-Brown Act ("MMBA") governs labor-management relations in California's local governments. Cal. Gov. Code. § 3500, 3501(c). The Act provides "a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment." *Santa Clara County Counsel Attys. Ass'n v. Woodside*, 7 Cal. 4th 525, 536 (1994). Of particular relevance, the Act "imposes on local public entities a duty to meet and confer in good faith with representatives of recognized employee organizations, in order to reach binding agreements governing wages, hours, and working conditions of the agencies' employees." *Coachella Valley Mosquito & Vector Control Dist. v. California Pub. Employment Relations Bd.*, 35 Cal. 4th 1072, 1083 (2005).

Article III of the United States Constitution provides federal courts with jurisdiction over "concrete and particularized," "actual and imminent" claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The courts are prohibited from issuing advisory opinions or declaring rights based on hypothetical situations. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).

Plaintiff's MMBA claim is not ripe, as the Act only requires Defendants to meet and confer in good faith regarding the creation of binding employment agreements, and the time for negotiations between Plaintiff and Defendants has not yet arrived. *See Coachella Valley Mosquito*, 35 Cal. 4th at 1083. Until Defendants make a unilateral change to the employment conditions specified in the current labor contract between the Parties, or fail to meet and confer in good faith regarding a future labor contract, there is no "actual and imminent" MMBA violation. *See Lujan*, 504 U.S. at 560; Cal. Gov. Code. §§ 3500,

14

3505.2, 3505.5. The fact that Board members' positions regarding future collective bargaining are presently hostile does not guarantee that they will fail to negotiate in good faith when called upon to do so at some later date. Because the alleged harm is contingent on future events, it is not ripe for adjudication by this Court. *See Texas*, 523 U.S. at 300.

The Court is also not convinced that Plaintiff has been prevented from representing its members, or that it is otherwise impossible for Defendants to engage in good faith future negotiations as a result of the alleged threats. *See* Opp'n at 14-17. Such claims are highly speculative and fall far short of the "concrete and particularized" standard required for ripeness. *See Lujan*, 504 U.S. at 560. The "good faith" nature of Defendants' behavior must be assessed at the time that negotiations actually take place, not prematurely determined based upon a few statements made by two members of the Board of Supervisors months before the Parties are set to meet and confer. *See Nat'l Labor Relations Bd. v. Truitt Mfg. Co.*, 351 U.S. 149, 155 (1956) ("The previous relations of the parties, antecedent events explaining behavior at the bargaining table, and the course of negotiations constitute the raw facts for reaching [a finding of bad faith]."). Further, Plaintiff fails to explain why it can no longer represent its members, even assuming that such a claim is cognizable given the representative status of this suit.

Accordingly, Plaintiff's Meyers-Milias-Brown Act claim is DISMISSED WITHOUT PREJUDICE, allowing Plaintiff the opportunity to allege some present or immediate, non-contingent violation of the Act in an amended complaint.

## VI. Relief Sought
### A. Declaratory Relief

In its prayer for relief, Plaintiff requests "a declaration that the individually named Defendant Board members' conduct violated" Plaintiff's rights under the Constitution and the MMBA. Compl. at 10:15-18. Declaratory relief is governed under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between

15

parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

As previously explained, there is no immediate controversy. Defendants cannot unilaterally enact pension reform, and the Court has been provided no evidence that the Parties are set to meet and confer about DSA members' employment conditions in the immediate future. If contract negotiations were in progress and Defendants continued to issue the threats alleged, then declaratory relief might be more appropriate. These are the not the factual circumstances before the Court. Further, Plaintiff's request for declaratory relief specifically seeks a declaration that Defendants' past conduct was a violation of Plaintiff's rights. Compl. at 10:15-18. As explained above, this is incorrect. Accordingly, declaratory relief is not available under the current Complaint.

### B. Injunctive Relief

To be entitled to injunctive relief, a plaintiff must demonstrate that they face irreparable injury that is real, immediate, and direct - not "abstract," "conjectural," or "hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983). Because the Complaint fails to allege that Defendants have taken any adverse employment action, or that Plaintiff faces any *immediate and direct* threat of *irreparable* harm absent the intervention of this Court, Plaintiff is not entitled to injunctive relief on the present facts. As explained by Defendants, *Indio Police Command Unit Ass'n v. City of Indio* is inapposite, as the defendant in that case had already violated its meet and confer obligations under the MMBA. 230 Cal. App. 4th 521, 539-40 (2014). Here, Defendants have not yet violated their duty to negotiate in good faith, and there is no direct and immediate threat of such violation where negotiations will not take place for more than one year.

16

**CONCLUSION**

For the reasons articulated above, the Court hereby ORDERS that Plaintiff's First Amendment and MMBA claims are DISMISSED WITHOUT PREJUDICE. Additionally, all claims against Defendants Gioia and Glover are DISMISSED WITHOUT PREJUDICE. Finally, the Court takes judicial notice of the facts contained within Exhibits B and C that describe the timeline for contract negotiations between the Parties. Accordingly, the hearing on this matter currently set for March 30, 2015, is hereby VACATED.

Plaintiff is granted leave to amend, and shall file an amended complaint on or before **April 14, 2015**. Failure to file a timely amended complaint shall result in dismissal with prejudice of all causes of action and termination of this case.

**IT IS SO ORDERED.**

Dated: 03/24/15

THELTON E. HENDERSON
United States District Judge